# EXHIBIT 3

**U.S. Department of Labor**  Occupational Safety and Health Administration
J.F.K. Federal Building, Room E340
Boston, MA 02203
Telephone   (617) 565-9860
Fax         (617) 565-9827

Reply to the Attention of: /OSHA/BOS/EPTS



February 1, 2007

Marc Freiberger
Shilepsky O'Connell LLP
225 Franklin Street
16th Floor
Boston, MA 02110

Re :  FMR Corporation, et al/Zang/1-0120-05-016
      Section 806 of Sarbanes Oxley Act of 2002

Dear Mr. Freiberger:

This is to advise you that we have completed our investigation of the above referenced complaint filed by your client, Jonathan M. Zang (Complainant) against FMR Corporation, Fidelity Management & Research Company, FMR Company, Incorporated, Fidelity Select Portfolios and Fidelity Trend Fund on September 15, 2005, under the employee protection provisions of Section 806 of the Corporate and Criminal Fraud Accountability Act, Title VIII of the Sarbanes Oxley Act of 2002, 18 U.S.C. Section 1514A (hereinafter called SOX). In brief, you allege that you suffered several adverse actions which culminated in your termination from Fidelity Management & Research Company on July 15, 2005, in retaliation for emailing a "General Research Note" memorandum to peers, managers and executives on March 13, 2005, in which you alleged violations of U.S. Securities and Exchange Commission rules and regulations.

Following an investigation by a duly authorized investigator, the Secretary of Labor, acting through her agent, the Regional Administrator of the Occupational Safety and Health Administration (OSHA), Region I, finds that there is no reasonable cause to believe that Respondent violated SOX and issues the following findings:

### Secretary's Findings

Respondents Fidelity Management and Research Company and FMR Co., Inc. are companies within the meaning of 18 USC 1514A in that they are required to file reports under Section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 780(d)). Complainant was employed by Fidelity Management and Research Company, a wholly owned subsidiary of the parent corporation, FMR Corp. FMR Co., Inc. is a wholly owned subsidiary of Fidelity Management and Research Company, and both FMR Co., Inc. and Fidelity Management and Research Company serve as investment advisers to the parent company's mutual funds. These funds, Fidelity Select Portfolios and Fidelity Trend Fund, are required to file reports under Section 15(d) of the Securities Exchange Act of 1934. Because these funds have no Board

of Directors, Officers, or employees, FMR Co., Inc., and Fidelity Management and Research Company file these reports on behalf of the funds, thus making them covered companies under Section 806 of SOX. Because we are dismissing this complaint on other grounds, it is not necessary to determine whether FMR Corp., Fidelity Select Portfolios, and Fidelity Trend Fund are covered companies under SOX.

Complainant was employed by Respondents Fidelity Management and Research Company and FMR Co., Inc. as a research analyst and select fund manager in their U.S. Equities Department. Complainant is an employee covered under 18 U.S.C. Section 1514A.

On September 15, 2005, Complainant filed a complaint with the Secretary of Labor alleging that Respondents discriminated against him in violation of SOX. The complaint was timely filed.

Complainant began working for Respondents in September 1997, as a research analyst responsible for performing research on companies and stocks within an assigned industry. Respondents' policy is to rotate analysts among various sectors every two to three years. From October of 2001 through October 2004, Complainant worked in the Healthcare Service Group. Analysts are required to regularly communicate information and provide investment insights to portfolio managers and other analysts who depend on such information to evaluate potential investments for the mutual funds they manage. In addition to his analyst duties, Complainant managed Select Portfolios mutual funds.

One of the tools used by Respondent to evaluate analysts is the Portfolio Manager Survey (PM Survey) in which portfolio managers rate analysts on quality of work, communication skills, impact, conviction, and creativity. A poor PM Survey rating will be reflected in an analysts' performance review. Complainant was very critical of the PM Survey and believed that it was subjective and not based on analysts' actual performance.

Throughout 2002 and early 2003, Complainant received poor performance reviews and in July 2003 was placed on a performance improvement plan. Although his performance improved while on the plan, he was warned that the improvement only brought him up to a minimum standard of acceptable work. Management required Complainant to get outside help with time management and provided him with a coach to assist him. His work over the summer and fall of 2004 showed some improvement, and this was acknowledged in his December 2004, performance review.

In October 2004, Complainant was transferred to the Energy group to serve as a research analyst there. In January of 2005, he began managing a select fund, the Select Natural Gas Fund. Complainant disagreed with Respondent's policy of rotating analysts and did not want to be transferred to the energy sector. After his transfer to the Energy Group, Complainant's performance deteriorated. The evidence shows that during the months leading up to his termination, Complainant produced significantly less work than similarly situated research analysts. He produced less than one half of the average number of notes produced by other analysts. Further, much of the work he did produce was actually prepared by others or was a modification of work prepared by outside brokerage firms. Many portfolio managers felt that Complainant's lack of output was impacting them, and they made their dissatisfaction with Complainant's performance known to Respondents.

During early winter 2005, Complainant's supervisor solicited volunteers for a task force to revise the research analysts' evaluation and compensation process and Complainant volunteered to participate.

On February 18, 2005, Respondent emailed the Fidelity Select Portfolio's Statement of Additional Information (SAI) to all portfolio managers and research analysts for review and comment. An SAI contains information about a mutual fund that must be made available to investors upon request, and

2

supplements the fund's prospectus. The SAI circulated on February 18, 2005, was also filed with the SEC for review and comment, prior to being made available to shareholders.

On March 13, 2005, Complainant, using Respondents' electronic communications system, distributed an email entitled "We Should Each Take a Stand to Save FMR" to approximately one hundred colleagues, managers and executives. Complainant attached two documents to the email: a twelve page memorandum which contained Complainant's opinions about Respondent's deficiencies in areas such as leadership and management, with a focus on criticism of the company's analyst evaluation and compensation process; and a single page with the words "PM Survey" with a circle around them and a line drawn through them. Complainant's memorandum urged portfolio managers to abstain from using the PM Survey and encouraged them to hang the "no PM" symbol outside their offices to express their support for the abolishment of the survey, "in favor of evaluation tools that demonstrably benefit shareholders."

In the memorandum, Complainant quotes from the February 18, 2005, SAI and comments that while the attorneys may deem it technically correct, it "…portrayed inaccurately the relative importance of compensation drivers." Complainant was referring to criteria Respondents used in determining research analysts' compensation as select fund managers.

On another page in the memorandum Complainant inserted a boxed-in caption, or mock headline stating: *"AG Riley to Fidelity: Return Fees for Veiled Index Funds –Boston Herald, xx/xx/05?"*

Complainant alleges that the above references are the core of his protected activity. OSHA however, finds that neither of these references, nor anything else in the March memorandum, constitutes protected activity. Regarding Complainant's comments about the SAI, OSHA finds Complainant could not have had a reasonable belief that he was reporting violations of SEC rules or regulations or shareholder fraud. Complainant did not allege that Respondent either omitted or falsely listed factors used to derive analyst compensation. Given the timing of Complainant's memorandum; that the SAI had been circulated for comment and was still in the draft stage with the SEC; and that Respondent was already engaged in an open effort to involve employees in revising the evaluation/compensation process for analysts, Complainant's allegation lacks credibility.

Furthermore, his allegation that he was communicating that Respondent could be subject to prosecution for violations of securities laws related to charging excessive fees for "veiled index funds" is completely without merit. The only sentence in the twelve page memorandum dealing with this subject is devoid of any specific information and could not possibly be interpreted as "providing information" as protected by the Act.

Complainant alleges other instances of protected activity. He states that he engaged in protected activity when he met with Mark Jensen, Respondent's Associate General Counsel, on March 18, 2005. Again, Complainant has failed to provide any evidence that he provided information to Jensen about fraud or violations of securities laws or fraud against shareholders. Complainant and Jensen did discuss Complainant's concerns about the SAI and the compensation system for analysts, and some of Complainant's suggestions were incorporated into the final version of the SAI.

OSHA also finds that an email Complainant sent to managers on April 11, 2005, was not protected activity under SOX. In the email, Complainant notes that he has attached a February 28, 2005, copy of the disclosure regarding Select Fund manager compensation and states that he believes it, "improves upon the plan in effect in 2004 by strengthening the connection between the Select fund performance and Select fund manager compensation…." The impression left by this email is that Complainant is satisfied that things are moving in the right direction and wishes to engage in further discussion of the

issues he has raised – hardly an allegation of fraud or violations of law.

Complainant contends that following his March 13, 2005, memorandum, he suffered adverse actions including: not being allowed to attend a Board of Trustees meeting; receiving a written warning for sending the memo; being passed over for Respondent's Select Fund Performance Award; and finally, being terminated on July 15, 2005. Since OSHA has determined that there was no protected activity, there is no need to examine each alleged adverse action.

Respondent has shown that many of the concerns Complainant raised in his memorandum were widely shared in the company, including among management. Respondent has provided credible evidence that its major concern about the March memorandum had to do with how much time Complainant had spent writing it, while failing to perform the duties of his job. Respondent has shown that the written warning Complainant received (later retracted) was not related to the content of the memo but rather to Respondent's perception that he misused company email and was disruptive in his method of communicating. It is clear that if Complainant's March 18, 2005, memorandum was a contributing factor at all, it was only because it focused attention on the fact that he was not doing his job.

The evidence shows that Respondent was in the process of management restructuring in April and May 2005, and it was during that restructuring that the company took a closer look at the performance of its analysts and portfolio managers. According to Respondents, when Complainant was terminated, two portfolio managers were discharged and one analyst was placed on a performance improvement plan.

Because Complainant has not shown that he engaged in protected activity, he has not established a prima facie claim of retaliation. Furthermore, a preponderance of the evidence supports Respondent's contention that Complainant was terminated for poor performance.

## Order

The complaint is dismissed.

Respondent and Complainant have 30 days from receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review. Objections must be filed in writing with:

>Chief Administrative Law Judge
>U.S. Department of Labor
>Suite 400N, Techworld Building
>800 K Street, NW
>Washington, D.C. 20001-8002
>(202) 693-7542, Facsimile (202) 693-7365

With copies to:

Respondent

Marthe B. Kent
Regional Administrator
Occupational Safety and Health Administration
J.F.K. Federal Building, Room E-340
Boston, MA 02203

In addition, please be advised that the U.S. Department of Labor generally does not represent any party in the hearing; rather, each party presents his or her own case. The hearing is an adversarial proceeding before an Administrative Law Judge (ALJ) in which the parties are allowed an opportunity to present their evidence de novo for the record. The ALJ who conducts the hearing will issue a decision based on the evidence, arguments, and testimony presented by the parties. Review of the ALJ's decision may be sought from the Administrative Review Board, to which the Secretary of Labor has delegated responsibility for issuing final agency decision under SOX. A copy of this letter has been sent to the Chief Administrative Law Judge along with a copy of the complaint. The rules and procedures for the handling of SOX cases can be found in Title 29, Code of Federal Regulations Part 1980, a copy of which was sent to you earlier, and may be found at www.osha.gov.

Sincerely,

Marthe B. Kent
Regional Administrator

cc: Mr. Wilfred J. Benoit Jr., Esq.
Chief Administrative Law Judge, USDOL
U.S. Securities and Exchange Commission