# EXHIBIT 5
# PART M

UNITED STATES DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES

| | |
|---|---|
| JONATHAN M. ZANG, )<br>)<br>Complainant, )<br>)<br>v. )<br>)<br>FIDELITY MANAGEMENT & RESEARCH )<br>COMPANY, FMR CO., INC., FMR CORP., )<br>FIDELITY SELECT PORTFOLIOS, and )<br>FIDELITY TREND FUND, )<br>)<br>Respondents. ) | CASE NO.: 2007-SOX-27<br>Hon. Colleen A. Geraghty |

**COMPLAINANT JONATHAN M. ZANG'S FIRST SET OF INTERROGATORIES TO RESPONDENT FMR CORP.**

Complainant Jonathan M. Zang, through undersigned counsel, hereby submits his First Set of Interrogatories upon FMR Corp. ("FMR") pursuant to 29 C.F.R. § 18.18, to be answered under oath within 30 days. In answering these requests, the following instructions and definitions apply to each interrogatory, unless otherwise specifically provided:

**Definitions**

For the purposes of these Interrogatories, the terms used herein shall have the following meanings unless the context requires otherwise:

1. "You" or "Your" or "FMR" or "Respondent" means FMR, its successors, predecessors, assigns, present and former officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives, and all other persons acting on behalf of FMR.

2. "Complainant" or "Zang" refers to Complainant Jonathan M. Zang.

3. As used herein, the word "Fidelity" refers to Fidelity Management & Research Company, FMR Co., Inc., and FMR Corp., collectively.

4. As used herein, "Funds" refers to Fidelity Trend Fund, the Fidelity Select Funds, and Fidelity Select Portfolios.

5. "Complaint" refers to the September 15, 2005, initial written complaint filed by Zang with the Department of Labor ("DOL") and all subsequent submissions by Zang or his counsel to DOL.

6. "Documents" means all written, typed or printed matter and all magnetic or other records or documentation of any kind or description (including, without limitations, letters, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, records or notations of telephone or personal conversations, conferences, interoffice communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts, electronic communications, e-mails (and attachments thereto), text messages, and worksheets, including drafts and copies not identical to the originals, all photographs and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of any and all present or former officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives, consultants, accountants, or attorneys, whether or not prepared by you.

7. "Communication" means all verbal conversations, discussions, e-mail and/or "IM" messages, letters, telegrams, memoranda, and any other transmission of information in any other form, both oral and written.

8. "File" means any collections or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, notebooks, or other devices for separating or organizing documents.

9. "Person" means all entities, including without limitations, all predecessors in interest, individuals, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

10. "Relating to" and "relates to" means, without limitation embodying, mentioning, or concerning, directly or indirectly, the subject matter identified in the Interrogatory.

11. The words "describe" and "identify" when referring to a person are defined to require that you set forth the following information:

    a. Full name;

    b. Present or last known residential address;

    c. Present or last known telephone number;

    d. Present occupation, job title, employer, and employer's address;

    e. Occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular interrogatory; and

    f. In the case of any person other than an individual, identification of the officers, agents, contractors, subcontractors, employees, personnel,

3

directors, trustees and/or company representatives most closely connected with the subject matter of that Interrogatory and of the officer who is responsible for supervising the officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives with regard to the subject matter of that Interrogatory.

12. The words "describe" and "identify" when referring to a document are defined to require that you set forth the following information:

   a. The nature (e.g., letter, handwritten note) of the document;

   b. The title or heading that appears on the document;

   c. The date of the document and the date of each addendum, supplement or other addition or change;

   d. Identification of the author and of the signer thereof, and of the person on whose behalf or at whose request or direction the document was prepared or delivered;

   e. Identification of the addressee or recipient thereof, if any; and

   f. The present locations of the document, and the name, address, position or title and telephone number of the person or persons having custody.

13. The words "describe" and "identify" when referring to an event, occurrence, act, transaction or conversation are defined to require that you set forth the following information:

   a. The date and place of such event;

   b. The persons involved; and

   c. Description of the event

14. The words "Disciplinary History" includes any formal or informal, both verbal and written, admonitions, counseling warnings, performance improvement plans, suspensions, punishment, and any tangible employment actions that resulted therefrom.

15. The words "supervisor" and "supervisory" shall mean any FMR officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives who were considered by FMR to be or have been superior to Zang. This includes any individual:

    a. from whom Zang received direction, guidance, or instruction;

    b. to whom Zang reported his activities for evaluation; or

    c. whom Fidelity, the Funds or FMR authorized:

        i. to evaluate the quality of Zang's performance; and/or

        ii. to recommend or decide questions of promotion, payment of bonuses, increases or decreases in compensation, and/or changes in job duties or responsibilities.

16. The words "compensation package" shall mean base salary, bonus scheduled or unscheduled, incentive payments, stock offerings, stock options, stock, equity-linked compensation, deferred compensation, compensation via equity, money market or other saving or investment vehicles offered by FMR or its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives, whether or not FMR or its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives contributed to such offerings, or any other forms and

methods of remuneration employed by FMR or its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives.

## Instructions

1. Separately answer each part of each Interrogatory.

2. To the extent a privilege is claimed with respect to any information covered by any Interrogatory, you are requested to state, with respect to such information, the following as applicable:

   a. The name, job title, and address of the author of such information;

   b. The name, job title, and address of the person to whom such information is addressed or circulated and who saw it;

   c. The present location of the information and the name, job title, and address of the custodian of the document;

   d. The date upon which such information was prepared;

   e. The title or heading of such information;

   f. The type of information (e.g., hand-written note, memorandum, tape recording, journal, desk calendar, books of account, etc.);

   g. Anything else that might be necessary to describe such information sufficiently for a designation thereof;

   h. The grounds for claiming privilege.

3. Whenever you are requested to give specific information, such as a date or figure, and you cannot give the exact information, state that you cannot give the exact information and give your best estimate thereof.

4. In response to each interrogatory, identify each person who participated in the preparation of the response, including without limitation, all persons who drafted proposed or actual responses or who provided information or documents to be used in the preparation of responses, and identify and describe each file and each document consulted or referred to in the preparation of the answer.

5. Capitalization or the lack thereof of particular words, i.e., "document" or "Document," does not change the meaning of a term defined herein.

6. Unless otherwise specified, each Interrogatory requires a continuing response, and you are requested to reasonably supplement or amend your responses to these Interrogatories based upon any and all information and documents obtained after filing such responses.

**Interrogatories**

1. Describe in detail the relationship between Fidelity Management & Research Company, FMR Co., Inc., FMR Corp., Fidelity Select Portfolios, and Fidelity Trend Fund.

2. State whether FMR, through its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives, conducted any inquiry or investigation into any of the allegations contained in the Complaint, and, if so, identify the person(s) who conducted the inquiry or investigation, the persons interviewed, the dates of any interviews, and the existence of any memoranda or other record of the inquiry or investigation, and provide a summary of the findings of any such investigation.

3. Describe the investigation, if any, and disciplinary action, if any, which resulted from each and every report from any source alleging that FMR or any of its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives drafted, contributed to, approved of, and/or filed inaccurate or otherwise misleading disclosures to the Securities and Exchange Commission (SEC).

4. State all criteria FMR or its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives used to evaluate the performance of Equity Research Analysts and Portfolio Managers from September 1, 1997 through the present, and identify all documents that contain such criteria, and describe in detail how such criteria changed during this time period.

5. Identify any and all officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives that evaluated either Zang or Zang's performance and to whom the officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives reported their findings, and, describe these findings, the date on which the findings were made, and the basis for the findings.

6. Explain in detail the process by which the decision was made to place Zang on a Performance Improvement Plan (PIP) in or around July 2003, the basis for the PIP, and identify the person(s) responsible, the person(s) involved in the decision to place Zang on a PIP, and/or the person(s) whose input was considered in the decision to place Zang on a PIP.

7. Explain in detail the process by which the decision was made to take Zang off the PIP in or around March 2004, the basis for the decision to take Zang off the PIP, and identify the person or persons responsible, the person or persons involved and/or the person(s) whose input was considered in the decision to take Zang off the PIP.

8. State all of the reasons why Zang was informed that his attendance at the Select Medical Delivery Fund Board of Trustees Meeting scheduled for March 17, 2005, was no longer required and identify the person(s) who made, influenced or discussed the decision to exclude Zang from this meeting.

9. Describe in detail Mark Jensen's meeting with Zang on March 18, 2005, including the purpose of the meeting and the basis for the meeting, and identify the person or persons responsible, the person or persons involved and/or whose input was considered in the decision to initiate the meeting and anyone to whom Jensen reported the outcome of the meeting either verbally or in writing.

10. Describe in detail what Mark Jensen reported or communicated regarding the outcome of his March 18, 2005, meeting with Zang, the person or persons who received, reviewed, or were apprised of each report or communication, the date each report or communication was transmitted and/or delivered, and the date that each person or persons received, reviewed, or were apprised of each report or communication.

11. Explain, in detail, the process by which the decision was made to issue Zang a written warning on or about March 15, 2005, the basis for the warning, and

9

identify the person or persons responsible, the person or persons involved and/or whose input was considered in the decision to issue the warning.

12. Explain in detail the process by which the decision was made to withdraw the written warning dated March 15, 2005, the basis for the withdrawal on or around June 14, 2005, and identify the person(s) who decided to withdraw the warning, the person(s) involved and/or whose input was considered in the decision to withdraw the warning.

13. Explain in detail the process by which the decision was made to terminate Zang effective July 15, 2005, the basis for the termination, and identify the person(s) responsible, the person(s) involved, and/or the person(s) whose input was considered in the decision to terminate Zang.

14. Explain in detail the process which led to and the basis for, and identify the person(s) responsible, the person(s) involved, and/or the person(s) whose input was considered in, the decision to terminate Zang.

15. Describe each and every reason you and/or your officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives terminated Zang's employment.

16. Describe in detail the role that any FMR officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives play in the guidance, supervision, oversight, remuneration, evaluation, discipline, or termination of Fidelity Portfolio Managers or Equity Research Analysts.

17. Describe in detail all communications by or among any FMR agents, personnel, officers, trustees, and/or representatives from July 1, 2003 through July 15, 2005, concerning any aspect of Zang's performance.

18. Describe in detail any effort undertaken by any FMR officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives to investigate any issue raised by Zang regarding the accuracy of Fidelity's disclosure regarding sector fund portfolio manager compensation.

19. Identify the person or persons responsible, the person or persons involved, and/or whose input was considered in the decision to revise language concerning sector fund manager compensation in the Prospectus and SAI that had been transmitted to the SEC on or around February 18, 2005.

20. Describe in detail the role that FMR or any of its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives played in the identification, recommendation, evaluation, nomination, review, appointment or removal of any Funds trustees or officers from 2002 through 2005.

21. Identify the person or persons responsible, the person or persons involved, and/or whose input was considered in the identification, recommendation, evaluation, nomination, review, appointment or removal of any Funds trustees or officers from 2002 through 2005.

22. State all criteria FMR or any of its officers, agents, contractors, subcontractors, employees, personnel, directors, trustees and/or company representatives used to

identify, recommend, evaluate, nominate, review, appoint or remove any Funds trustees or officers from 2002 through 2006.

23. Describe all sources from which you receive revenue other than the revenue you receive from managing the Fidelity Funds, and describe the approximate percentage of your revenue that you receive from each source.

24. If you deny any Request for Admission propounded to you by Zang, describe the factual basis for your denial.

Jonathan M. Zang
*By Counsel*

R. Scott Oswald, Esq.
Nicholas Woodfield, Esq.
Jason Zuckerman, Esq.
THE EMPLOYMENT LAW GROUP, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.net
nwoodfield@employmentlawgroup.net
jzuckerman@employmentlawgroup.net
*Attorneys for the Complainant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Complainant Jonathan M. Zang's First Set of Interrogatories to Respondent FMR Corp. was served via email this 22nd of October, 2007, upon:

Wilfred J. Benoit Jr., Esq.
GOODWIN PROCTER LLP
53 State Street
Exchange Place
Boston, MA 02109
wbenoit@goodwinprocter.com

_____
Nicholas Woodfield