## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JONATHAN ZANG,

       Plaintiff,

    v.

                                      C.A. No. 08-CV-10758-DPW

FMR CO., INC., FIDELITY MANAGEMENT &
RESEARCH COMPANY, AND FMR LLC,

       Defendants.

## DEFENDANTS ANSWER TO COMPLAINT

For their answers and defenses to the Complaint of Jonathan M. Zang ("Zang"),

Defendants FMR LLC ("FMR"), Fidelity Management & Research Company ("FMRC" and

FMR Co., Inc. ("FMRCI"), (collectively, "Defendants") state as follows:

## FIRST DEFENSE

Answers to each paragraph of the Complaint are made without waiving, but expressly

reserving, all rights that Defendants may have to seek relief by appropriate motions directed to

the allegations of the Complaint.  Defendants answer the allegations set forth in the separately

numbered paragraphs of the Complaint as follows:

## INTRODUCTORY PARAGRAPH

Defendants acknowledge that Zang purports to bring an action against them for alleged

retaliation under Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002,

Title VIII of the Sarbanes-Oxley Act of 2002, codified at 18 U.S.C.§1514A.  Defendants deny

the remaining allegations contained in the unnumbered, introductory paragraphs of the Complaint.

## JURISDICTION AND VENUE

1.    Defendants admit that Zang filed a complaint with the Secretary of Labor under 18U.S.C. §1514A(b)(1)(A) and that the Secretary of Labor did not issue a final decision within 180 days of the filing of the complaint.  Defendants state that the remaining allegations contained in paragraph 1 of the Complaint constitute legal conclusions for which no answer is required.

2.    The allegations contained in paragraph 2 of the Complaint constitute legal conclusions for which no answer is required.

## PARTIES

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.

## FACTS

7.    Denied.  Further answering, Defendants state that FMRC and FMRCI" (collectively, the "Advisory Companies"), pursuant to advisory and sub-advisory contracts,  directly or indirectly serve as investment advisers to certain of the "Fidelity Investments" group of mutual funds ("Funds")  There currently are 426 Funds.  "Fidelity Investments" is not a legal entity; it is a registered service mark.  Each of the mutual funds in that group is a registered investment company that is required, by Section 15(d) of the Securities Exchange Act of 1934 and pursuant to SEC Rule 30d-1, to file under the Investment Company Act of 1940 reports on Form N-CSR

and Form NQ.  Under each advisory contract, FMRC has overall responsibility for directing the investments of each fund in accordance with its investment objectives, policies, and limitations, subject to the supervision of the Fidelity Mutual Funds' Board of Trustees (the "Board").  In addition, FMRC or one of its affiliates provides management and administrative services necessary for the operation of each mutual fund in the Funds, which include maintaining each fund's records and the registration of each fund's shares under federal securities laws.

8.      Admitted.

9.      Denied.  Further answering, Defendants state that FMRC is the investment adviser to a majority of the Funds.

10.     Defendants admit that FMRCI is a wholly-owned subsidiary of FMRC.

11.     Admitted.

12.     Denied.  Further answering, Defendants state that FMR LLC is the parent company of a number of companies in the financial services business that operate under the service mark "Fidelity Investments."

13.     The allegations contained in paragraph 13 of the Complaint constitute legal conclusions for which no answer is required.

14.     Denied.  Further answering, Defendants state that FMRC has entered into advisory contracts to serve as the investment adviser to a majority of the Funds.  Under its advisory contracts, FMRC has overall responsibility for directing the investments of each fund with which it contracts in accordance with its investment objectives, policies, and limitations, subject to the supervision of the Board.   In addition, FMRC or one of its affiliates provides management and administrative services necessary for the operation of each of such Funds, which include

3

maintaining such fund's records and the registration of such fund's shares under federal

securities laws.  FMRC has entered into a subadvisory agreement with FMRCI pursuant to which

FMRCI has responsibility for choosing investments for certain of the Funds.

15.     Defendants admit that, in their capacities as contractors and/or subcontractors to the

Funds, FMRC and/or FMRCI direct the investments of each of the Funds with which they

contract in accordance with its investment objectives, policies, and limitations, subject to the

supervision of the Board.  Defendants further admit that FMRC and FMRCI furnish and pay for

such office space, facilities and personnel necessary for them to perform their contractual

responsibilities.  Defendants deny the remaining allegations of paragraph 15 of the Complaint.

Further answering, Defendants state that FMRC or one of its affiliates provides management and

administrative services necessary for the operation of such Funds, which include maintaining

each fund's records, the registration of each fund's shares under federal securities laws, and

preparing such funds' regulatory filings.

16.     Admitted.

17.     Denied.  Further answering, Defendants state that, pursuant to its advisory contracts,

FMRC or its affiliates regularly prepare reports to be filed by the Funds with the SEC.

18.     The allegations contained in paragraph 18 of the Complaint constitute legal conclusions

for which no answer is required.  To the extent an answer may be deemed required, Defendants

deny said allegations.

19.     Admitted, except that Zang had the additional duty of "select fund manager" – not

"portfolio manager" – his job title at all times during his employment was "Equity Research

Analyst."

4

20.     Denied.  Further answering, Defendants state that the employment agreement speaks for itself, and that Zang was employed initially by FMRC and then by FMRCI.

21.     Admitted.

22.     Defendants admit that Zang's employer changed from FMRC to FMRCI circa 2001 and that FMRCI remained Zang's employer until his termination in 2005.  Defendants deny the remaining allegations contained in paragraph 22 of the Complaint.

23.     Admitted.

24.     Admitted, except that Zang was "select fund manager" – not "portfolio manager" – his job title at all times during his employment was "Equity Research Analyst."

25.     Admitted, except that Zang was "select fund manager" – not "portfolio manager" – his job title at all times during his employment was "Equity Research Analyst.

26.     Denied.

27.     Defendants admit that, in evaluating  Zang's job performance and determining his compensation, FMRC and FMRCI considered his research work and the investment performance of the select funds that he managed pursuant to FMRC's and FMRCI's contractual obligations. Defendants deny the remaining allegations in paragraph 27 of the Complaint.

28.     Admitted.

29.     Denied.

30.     Admitted.

31.     Admitted.

32.     Admitted.

33.     Defendants admit that Zang was informed in September, 2004 that his research assignment included the U.S. coal mining industry, but are unable to specify the precise date.

34.     Denied.

35.     Denied.

36.     Defendants admit that Zang received praise for managing the Medical Delivery Select Fund.  Defendants deny that Zang engaged in any protected conduct.

37.     Denied.  Further answering, Defendants state that the merit review speaks for itself and must be read in its entirety.

38.     Defendants admit that, on December 1, 2004, Zang was awarded a "High Achiever Award" bonus for his performance as select fund manager of the Fidelity Select Medical Delivery Fund.  Defendants deny the remaining allegations of paragraph 38 of the Complaint. Further answering, Defendants state that the relative return of the Select Medical Delivery Fund managed by Zang was a significant factor driving the award, but that general overall satisfactory performance was necessary in order to receive the award.

39.     Denied.

40.     Defendants admit that paragraph 40 of the Complaint quotes a portion of an article that appeared in the January 7, 2005 edition of the *Boston Business Journal*.  Further answering, Defendants state that the article speaks for itself.  Defendants deny the remaining allegations contained in paragraph 40 of the Complaint.

41.     Denied.  Further answering, Defendants state that the email speaks for itself and must be read in its entirety.

42.     Admitted.

LIBB/1688279.3

43.    Defendants admit that Fidelity Select Portfolios is a Massachusetts business trust comprised of funds that are registered investment companies.  Defendants deny the remaining allegations contained in paragraph 43 of the Complaint.

44.    Admitted.

45.    Defendants are without knowledge or information sufficient to form a belief as to Zang's state of mind.  Further answering, Defendants state that there was no reasonable basis for Zang to believe that the SAI disclosures contained material inaccuracies or omissions.

46.    Denied.

47.    Denied.

48.    Denied.

49.    Defendants admit that, on March 13, 2005, Zang emailed a memorandum regarding internal managerial issues to numerous Fidelity personnel, including supervisors and colleagues. Defendants deny the remaining allegations contained in paragraph 49 of the Complaint.  Further answering, Defendants state that the March 13, 2005 e-mail Memorandum speaks for itself.

50.    Admitted.

51.    The allegations contained in paragraph 51 of the Complaint consist of legal conclusions for which no answer is required.

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.     The allegations contained in paragraph 56 of the Complaint consist of legal conclusions for which no answer is required.

57.     The allegations contained in paragraph 57 of the Complaint consist of legal conclusions for which no answer is required.

58.     The allegations contained in paragraph 58 of the Complaint consist of legal conclusions for which no answer is required.

59.     The allegations contained in paragraph 59 of the Complaint consist of legal conclusions for which no answer is required.

60.     Denied.

61.     The allegations contained in paragraph 61 of the Complaint consist of legal conclusions for which no answer is required.  To the extent an answer is deemed required, Defendants deny those allegations.

62.     Denied.

63.     Defendants deny that the term "veiled index fund" has any defined meaning in the mutual fund industry, and therefore deny the allegations of paragraph 63 of the Complaint.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Defendants deny that Fidelity operated "veiled index funds".  The remaining allegations contained in paragraph 67 of the Complaint constitute legal conclusions for which no answer is required.  To the extent an answer is deemed required, Defendants deny those allegations.

LIBB/1688279.3

68.     Denied.

69.     Denied.

70.     Defendants deny that Fidelity had conflicts of interest.  The remaining allegations contained in paragraph 67 of the Complaint constitute legal conclusions for which no answer is required.  To the extent an answer is deemed required, Defendants deny those allegations.

71.     Admitted.

72.     Defendants deny that Ms. Laurent "supervised" Mr. Jensen's review.  The remaining allegations contained in paragraph 71 of the Complaint constitute legal conclusions for which no answer is required.

73.     The allegations in paragraph 73 of the Complaint constitute legal conclusions, for which no answer is required.

74.     Defendants admit that Zang met with Mr. Jensen on March 18, 2005.  Defendants deny the remaining allegations contained in paragraph 74 of the Complaint.

75.     Denied.

76.     Denied.

77.     Admitted.

78.     Denied.

79.     Denied.

80.     Defendants admit that, on April 28, 2005, Fidelity Pricing & Cash Management Services, a group within FMR LLC, transmitted to the SEC a revised registration statement for Fidelity

LIBB/1688279.3

Select Portfolios, including a revised SAI.  Defendants further admit that the registration statement became effective April 29, 2005.

81.    Defendants admit that the April 28, 2005 SAI contained some revisions to the SAI that were made as a result of the concerns Zang expressed.

82.    Defendants admit that, in a July 25, 2005 memorandum, Mr. Jensen described the steps he took in response to Zang's articulated concerns about the SAI, and that Exhibit B to the Complaint is an accurate copy of that memorandum.

83.    Defendants admit that Exhibit C to the Complaint is a true copy of Ms. Collins' March 15, 2005 e-mail.  Defendants deny the remaining allegations contained in paragraph 83 of the Complaint.  Further answering, Defendants state that the e-mail speaks for itself.

84.    Defendants admit that Zang was informed that he was scheduled to attend the Board of Trustees meeting.  Defendants deny the remaining allegations contained in paragraph 84 of the Complaint.

85.    Defendants admit that, when practicable and prudent, depending on their other obligations and responsibilities, former fund managers attended Board of Trustees meetings in which the previous year's performance of their prior fund was reviewed.  Defendants deny the remaining allegations of paragraph 85 of the Complaint.  Further answering, Defendants state that attendance at such meetings was mandatory only for current fund managers.

86.    Admitted.

87.    Defendants deny that Ms. Collins "became irate" in her conversation with Zang. Defendants admit the remaining allegations contained in paragraph 87 of the Complaint.

LIBB/1688279.3

88.     Defendants admit that Mr. Feingold sent Ms. Collins an email regarding Zang on March 14, 2005.   Defendants deny the remaining allegations contained in paragraph 88 of the Complaint.  Further answering, Defendants state that the email speaks for itself.

89.     Defendants admit that Exhibit D to the Complaint is a copy of Mr. Feingold's March 14, 2005 email to Ms. Collins.   Defendants deny the remaining allegations contained in paragraph 89 of the Complaint.  Further answering, Defendants state that the email speaks for itself.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Defendants admit that Ms. Collins' voicemail was sent to all members of the Research Department.  Defendants are without knowledge or information sufficient to form a belief as to whether it was also sent to diversified Portfolio Managers.  Defendants deny that Ms. Collins mentioned Zang by name in her voicemail.

94.     Defendants admit that Ms. Collins' voicemail was in response to Zang's March 13 memorandum.  Defendants deny the remaining allegations contained in paragraph 94 of the Complaint.

95.     Defendants state the warning document speaks for itself, and must be read in its entirety.

96.     Defendants admit that the voice mail message did not reference any specific policy violations.

97.     Admitted.

98.     Denied.

99.     Defendants admit that the warning was retracted on June 14, 2005.  Defendants deny the remaining allegations contained in paragraph 99 of the Complaint.

100.    Defendants admit that in early to mid-May, Feingold had several discussions with Zang regarding Zang's performance and attitude towards work; that Feingold told Zang that management was reviewing who should remain on the Fidelity team; and that, based on Zang's performance and attitude, he might not "make the cut."  Defendants deny the remaining allegations of paragraph 100 of the Complaint.

101.    Denied.

102.    Denied.

103.    Defendants admit that Zang was not awarded the bonus.  Defendants deny the remaining allegations contained in paragraph 103 of the Complaint.

104.    Denied.

105.    Admitted.

106.    Defendants deny that Fidelity's corrective action policy required a progressive discipline approach, deny that Fidelity disregarded its policies in terminating Zang, and deny that Mr. Greer failed to give Zang an explanation for his termination.

107.    Defendants admit that Zang and his attorneys requested a copy of his personnel record. Defendants deny the remaining allegations contained in paragraph 107 of the Complaint.

108.    Defendants admit that, on November 1, 2005, Fidelity produced to Zang's attorneys, at their request, certain additional documents that might be considered part of his personnel record under Mass. G.L. c. 149, §52C, and that those documents included the "Termination Points"

memo and a draft 2005 merit review.  Further answering, Defendants state that Zang was previously given personnel (Human Resources) file documents pursuant to his request.

109.    Admitted.

110.    Denied.

111.    Denied.  Further answering, Defendants state that Zang was informed that he was not eligible for rehire.

112.    Defendants admit that, mistakenly, Zang initially was given a proposed separation agreement which provided for six months severance pay, that Zang was not eligible for severance pay under Fidelity's Severance Pay Plan, and that immediately upon discovering its error Fidelity withdrew the proffered agreement.

113.    Admitted.

114.    Defendants admit that Zang's employment termination occurred as a result of a review by FMRC and FMRCI of personnel following a May, 2005 management reorganization and that the same review had led to the termination of two Portfolio Managers.  Defendants further admit that Fidelity informed the Department of Labor of this as part of its response to Zang's whistleblower complaint.

115.    Admitted.  Further answering, Defendants state that the two Portfolio Managers were eligible for severance pay under Fidelity's Severance Pay Plan, and that Zang was ineligible for severance pay under that plan.

116.    Denied.

117.    Admitted.

118.    Admitted.

13

119.     Defendants admit that, on February 1, 2007, following an investigation, OSHA issued a decision dismissing Zang's SOX complaint based on its finding that "there is no reasonable cause to believe Fidelity violated SOX."

120.     Admitted.  Further answering, Defendants state that OSHA also determined that Fidelity had good reason to terminate Zang for unsatisfactory job performance.

121.     Admitted.

122.     Admitted.

123.     Admitted.

124.     Admitted.

125.     Admitted.

126.     Admitted.

127.     Defendants admit that more than fifteen days after giving notice, Zang filed the Complaint, and that no further substantive action was taken by the Secretary of Labor.  The remaining allegations contained in paragraph 127 of the Complaint constitute legal conclusions to which no answer is required.

## COUNT 1 – RETALIATION
## IN VIOLATION OF 18 U.S.C. §1514A

128.     Defendants restate and incorporate each of their answers to paragraphs 1 – 127 as if fully set forth herein.

129.     The allegations contained in paragraph 129 of the Complaint consist of legal conclusions, for which no answer is required.  To the extent an answer may be deemed required, Defendants deny those allegations.

14

130.    Defendants admit that FMRC and FMRCI were contractors or subcontractors of the Funds.  Defendants deny that FMR was a contractor or subcontractor of the Funds.  Defendants further deny that they were integrated entities of the Funds.  Defendants state that the remaining allegations contained in paragraph 130 of the Complaint consist of legal conclusions, for which no answer is required.  To the extent an answer may be deemed required, Defendants deny those remaining allegations.

131.    The allegations contained in paragraph 131 of the Complaint consist of legal conclusions, for which no answer is required.

132.    Admitted.

133.    Denied.

134.    Denied.

135.    Denied.

136.    Denied.

137.    Denied.

138.    Denied.

139.    Denied.

## COUNT II – WRONGFUL DISCHARGE
## IN VIOLATION OF PUBLIC POLICY

Count II has been dismissed, and therefore no answer to the allegations of paragraphs 140 – 143 of the Complaint is required.

## SECOND DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

LIBB/1688279.3

**THIRD DEFENSE**

Zang has failed to make reasonable efforts to mitigate, minimize or avoid any damages allegedly sustained, and therefore any economic damages against Defendants must be barred.

**FOURTH DEFENSE**

After the termination of Zang's employment Defendants discovered evidence that Plaintiff violated his employment agreement by failing to return Fidelity property.  This after-acquired evidence bars Plaintiff from reinstatement, and from recovering back pay and front pay.

**FIFTH DEFENSE**

Zang's claim is barred and he may not recover damages because Defendants would have taken the same actions even in the absence of any impermissible motivating factors.

**SIXTH DEFENSE**

The Complaint fails to state a claim under the Sarbane-Oxley Act because neither Zang nor Defendants are covered by the Act.

**SEVENTH DEFENSE**

Zang is not entitled to a jury trial under §806 of the Sarbanes-Oxley Act.

**EIGHTH DEFENSE**

Defendants hereby give notice that they intend to rely upon such further defenses as may become available during discovery proceedings in this case and hereby reserve the right to amend this answer and assert such defenses.

**PRAYER**

WHEREFORE, Defendants pray as follows:

1. That Zang takes nothing by way of the Complaint;

2. That the Complaint, and each purported claim for relief alleged therein, be dismissed with prejudice;

16

3.  That Defendants be awarded their costs of suit, including reasonable attorneys' fees; and

4.  For such other and further relief as the Court may deem just and proper.

<div style="margin-left: 40%;">

Respectfully submitted,

FMR LLC, FIDELITY MANAGEMENT &
RESEARCH COMPANY and FMR CO., INC.,

By their attorneys,


/s/ Wilfred J. Benoit, Jr.
Wilfred J. Benoit, Jr. (BBO No. 037900)
**GOODWIN PROCTER** LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000
wbenoit@goodwinprocter.com

</div>

Dated: May 25, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 25, 2010.

<div style="margin-left: 40%;">

/s/ Wilfred J. Benoit, Jr.

</div>

LIBB/1688279.3