1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    JONATHAN M. ZANG,                )
                          Plaintiff   )
5                                     )
     v.                               )
6                                     )  No. 1:08-10758-DPW
                                      )
7    FIDELITY MANAGEMENT & RESEARCH    )
     COMPANY, FMR CO., INC. AND FMR   )
8    LLC, f/k/a FMR CORP.,            )
                                      )
9                         Defendants.  )

10

11   BEFORE:   THE HONORABLE DOUGLAS P. WOODLOCK

12

13                    STATUS/SCHEDULING CONFERENCE

14

15

16           John Joseph Moakley United States Courthouse
                          Courtroom No. 1
17                        One Courthouse Way
                          Boston, MA 02210
18                      Monday, July 21, 2014
                              2:35 p.m.
19

20

21

                      Brenda K. Hancock, RMR, CRR
22                      Official Court Reporter
             John Joseph Moakley United States Courthouse
23                        One Courthouse Way
                          Boston, MA 02210
24                         (617)439-3214

25

1    APPEARANCES:

2
         JONATHAN M. ZANG, PRO SE
3        41 Phillips Street - #2
         Boston, MA 02114
4

5        GOODWIN PROCTER LLP
         By: Joseph F. Savage , Jr.
6            Wilfred J. Benoit, Jr., Esq.
         Exchange Place
7        53 State Street
         Boston, MA 02109
8        On behalf of the Defendants.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (The following proceedings were held in open court

2    before the Honorable Douglas P. Woodlock, United States

3    District Judge, United States District Court, District of

4    Massachusetts, at the John J. Moakley United States Courthouse,

5    One Courthouse Way, Courtroom 1, Boston, Massachusetts, on

6    Monday, July 21, 2014):

7          THE CLERK:  This is Civil Action 08-10466, Jackie

8    Hosang Lawson versus FMR, LLC, et al. and Civil Action

9    08-10758, Jonathan Zang versus Fidelity Management and Research

10   Company, FMR Co., Inc., et al.

11         Will counsel please identify themselves for the

12   record.

13         MR. SAVAGE:  Your Honor, it's Joe Savage for Fidelity.

14   With me is William Benoit.  We're here on the Zang matter.

15         THE COURT:  I think I want to deal with the Lawson

16   case first.

17         MR. SAVAGE:  Do you want us to step back, then?

18         THE COURT:  It is fine to stay there, as long as you

19   do not cause any trouble.

20                      (Laughter)

21         MR. SAVAGE:  I will do my best, your Honor.  I am

22   under severe supervision.

23         THE COURT:  Right, I understand that.

24         MR. KETTELWELL:  William Kettlewell, your Honor, from

25   Fidelity, along with Victor Steinberg.

1          MS. STEINBERG:  Good afternoon.

2          MS. STUDEN:  Attorney Laura Studen, with Bob Friedman,

3     for Jackie Lawson.

4          THE COURT:  And is Mr. Zang here?

5          MR. ZANG:  Yes, your Honor.

6          THE COURT:  Mr. Zang, you are not represented by

7     counsel?

8          MR. ZANG:  That's correct, your Honor.

9          THE COURT:  Well, I want to take up the Lawson case

10    first, so you can stay in place, shelter in place.

11          (Lawson v. FMR, LLC hearing held on the record)

12          THE COURT:  So, let's go to this, Mr. Zang.  The

13    reason I asked the question straight out is that I sure would

14    not want to be appearing as a litigant on my own behalf, and I

15    do not think maybe you should.

16          So, have you talked to counsel?  Have you thought

17    about having counsel in this case?  Are you prepared to go

18    forward?  Because I have to tell you that, while I will try to

19    explain issues that may not be altogether clear, I am going to

20    treat you the same way I treat any other litigant and his

21    counsel in the case.  I cannot pause for a moment and explain

22    strategic judgments that you might want to make, and I think

23    that you really, in a case of this complexity, ought to have

24    counsel.

25          MR. ZANG:  Thank you, your Honor.  I have explored the

1    possibility of having counsel for this case.

2        THE COURT:  Do you have counsel for the case in

3    Suffolk County?

4        MR. ZANG:  Yes, your Honor, I do.

5        THE COURT:  And they are not interested, or you do not

6    want to pursue having them represent you here?

7        MR. ZANG:  I'm sorry.  Could you clarify your

8    question?

9        THE COURT:  You do not want to pursue having them

10   represent you in this case?  They are familiar with some

11   aspects, I guess, of the process of termination.

12       MR. ZANG:  It is a separate case with separate legal

13   theories, as your Honor is aware of.  As of this point, my

14   counsel there is not filing an appearance here.

15       THE COURT:  Well, let me say this:  I will set a

16   schedule, but I am not going to change the schedule if new

17   counsel gets involved here.  The case is entitled to a schedule

18   that is adapted to it and not to whether or not at some time in

19   the future counsel is going to appear.

20           I recall that you were represented by counsel before

21   me and before the First Circuit, and then there was joint

22   counsel, I guess, in the Supreme Court.  So, if you do not have

23   counsel, that is your choice, "choice" defined broadly, and the

24   schedule is going to be what the schedule is, and you are going

25   to have to conform to it, and anybody who comes into the case

1  is going to have to conform to it.

2           Do you understand?

3           MR. ZANG:  Yes, your Honor, I do.  On that point --

4           THE COURT:  Right.

5           MR. ZANG:  -- may I just make one request to make a

6  very small addition to my part of the joint submission?  By the

7  way, I have a -- I do this.  If I am having trouble and you

8  know what I want to say, I will not take offense if you jump

9  in.

10          THE COURT:  My experience, I have to tell you, is,

11 there are several attorneys who have a stammer in the court.

12          MR. ZANG:  Okay.

13          THE COURT:  I will just use that as a broad view of

14 it.  I am used to it, and a jury is used to it within 15

15 minutes.  They size it up and understand that people have

16 different ways of speaking.

17          MR. ZANG:  Thank you.

18          But my one request that I would ask the Court to

19 consider is, while I was on my way in this afternoon, counsel

20 for defendants conferred with me on their intended Motion for

21 Summary Judgment, and so I would just ask the Court's

22 permission to amend my submission to also request that a

23 deadline for oppositions to summary judgment be set for

24 October 15 of 2015.

25          THE COURT:  Well, let me go back before that, because

1    you seem not to be satisfied with the state of the record as it

2    exists now.  Their argument, I guess, is there has been enough

3    discovery here related, in large part, to the Suffolk County

4    case, that there is no need for discovery.  I am not sure I

5    understand your position with respect to that, that is, what

6    other discovery would you want here, if anything?

7            MR. ZANG:  I guess there are two primary areas that

8    come to mind right away.  The first is the areas of discovery

9    that the defendants, who are the same in that case as in this

10   case, felt were relevant in any way to this case.  In the

11   Suffolk County case they objected to all of those such

12   discovery requests on the grounds of lack of relevance to the

13   Suffolk County case.

14           THE COURT:  What does that mean, then?  You want to do

15   the depositions again?  What is it that you are looking for?

16           MR. ZANG:  I am primarily thinking of document

17   requests.  There were objections during depositions on subject

18   matter that the defendants believed pertained to this case.  I

19   can assure the Court I have no interest whatsoever in repeating

20   or duplicating any of the work that has previously been

21   completed.

22           THE COURT:  I am just thinking in terms of things, not

23   concepts.

24           MR. ZANG:  Sure.

25           THE COURT:  Would you just propose to resubmit the

1    interrogatories to which there were objections taken on the

2    basis of relevance, or do you have something more that you

3    would like to seek?

4            MR. ZANG:  Well, I would like to be able to submit

5    more interrogatories pertaining to this case, because the

6    interrogatories in the Suffolk County case were not crafted

7    with an eye towards uncovering evidence in this case, your

8    Honor.

9            THE COURT:  But just interrogatories, as I understand

10   you; you do not want depositions?

11           MR. ZANG:  No, your Honor, I would also like

12   depositions but do not foresee coming anywhere close to the --

13   I think the limit that is set in the --

14           THE COURT:  So, how many?  Who and how many?

15           MR. ZANG:  Oh, I'm sorry.  So, there were no 30(b)(6)

16   depositions in the other case, there were no Human Resources

17   depositions in the other case, and Human Resources was

18   intimately involved, according to the privilege log that was

19   submitted, was intimately involved in a lot of the decisions

20   that took place after the protected activity under the

21   Sarbanes-Oxley.  There will also be discovery relating to

22   damages.

23           Those are the key areas.

24           THE COURT:  Well, but damages are in your hands.

25           MR. ZANG:  I'm sorry?

1          THE COURT:  Damages are in your hands.  That is, the

2     initiative with respect to damages is yours, not theirs, at

3     least as I understand it.  I guess I have to understand their

4     point of view on this.

5          Well, let me just hear from the defendants.

6          MR. ZANG:  May I just complete my answer to your

7     question?

8          THE COURT:  Sure.

9          MR. ZANG:  So, the second primary area that I am aware

10    of currently is, in fact, the damages.  The objections raised

11    by the defendants in the Suffolk County case didn't allow us to

12    conduct much, if any, discovery on --

13         THE COURT:  But that would be an element in the

14    Suffolk County case.  If you were to prevail in the Suffolk

15    county case, your damages would be the same, presumably would

16    be the same there as here.

17         MR. ZANG:  Yes.  And I guess it's of relevance,

18    perhaps, to this Court, your Honor, because the Suffolk County

19    case is currently set for trial later this year, and it's

20    certainly my hope that, if I am able to obtain discovery in

21    this case, that that could actually lead to maybe a successful

22    negotiation between myself and the defendants for that case,

23    which would obviously result in this case no longer being on

24    your calendar.

25         THE COURT:  I am not sure, as you have stated it, that

1    is a factor I will take into consideration.  I do not offer

2    discovery for purposes of leverage to some other piece of

3    litigation.  It may incidentally have that effect, but I am not

4    sure that I want to hold that as a standard for it.  So, I

5    think I understand a bit about what you are asking for.

6            Maybe you do not know fully, but "later this year,"

7    what does that mean?

8            MR. ZANG:  I believe it's in late October of this

9    year, currently.

10           THE COURT:  Is it assigned to a particular judge, or

11   do you know?

12           MR. ZANG:  I don't know how it works with the

13   rotations.  It has been in the same session the entire time,

14   but I do not know if it --

15           THE COURT:  But different judges have addressed the

16   various motions that have arisen during the course of the

17   litigation?

18           MR. ZANG:  Yes, your Honor.

19           THE COURT:  All right.  So, Mr. Savage or maybe

20   Mr. Benoit knows the --

21           MR. SAVAGE:  Thank you, your Honor.

22           I think Mr. Zang was quite candid, actually, as to

23   what his real objective here is for discovery.

24           THE COURT:  Let me just step ahead.  And I was candid

25   about how I treat that kind of thing.

1          But let me get back to the discovery here.  The

2     suggestion is that discovery was constrained in the Suffolk

3     County case with objections by the defendants to matters that,

4     while perhaps relevant to this case, were not relevant in that

5     case.

6          Do you understand that to be the case?

7          MR. SAVAGE:  That's certainly untrue as to the

8     depositions.  There were objections when all the questions were

9     answered.  There may have been some objections on the document

10    front, but I don't think anything significant, based on what I

11    know that we have.

12         In addition, contrary to what Mr. Zang said, the HR

13    people did -- Dana Lombardi (ph) did testify in the state case.

14         THE COURT:  Were there any assertions of privilege

15    with respect to HR?

16         MR. SAVAGE:  I don't know the answer to that.  I don't

17    believe so.  Not the HR to HR people or the policies.  There

18    were lawyers involved.

19         THE COURT:  So, communications between lawyers and the

20    HR people were subject to privilege?

21         MR. SAVAGE:  Yes.

22         Now, what I would suggest, your Honor, just as a

23    procedural alternative here and a follow-on to your questions

24    to Mr. Zang, if we can file our summary judgment motion later

25    this week, and then he wants to file a 56(d) motion saying, "I

1    need this precise discovery for this motion," that seems to me

2    to make a lot of sense.

3            I think he is not going to be able to show you

4    anything that is necessary for deciding the motion, but if he

5    did, obviously, we would be prepared to do a reasonable amount

6    of discovery related to what is happening.  We don't think

7    there is anything to do, but if you see our motion and you say,

8    well, obviously he has got to figure out if that is a factual

9    dispute, then we would understand.

10           THE COURT:  Why doesn't that work, Mr. Zang?  That

11   sounds agreeable to me as a way of framing the issues here.

12   You get a chance to look at it and say, "Wait a minute, you

13   cannot make me oppose this without letting me talk to 'X' and

14   'Y' and 'Z' here," and so I understand what the issues are.

15           MR. ZANG:  So, I think it doesn't work for several

16   reasons.  The other case, which I realize is not your concern,

17   is a handicap discrimination case.  My handicap is ADHD, and I

18   have incredible challenges with time management and large

19   tasks, such as responding to summary judgment motions.

20           So, while there is no doubt in my mind that I can

21   respond in a way to a summary judgment motion that very

22   sufficiently sets forth why summary judgment is not proper in

23   this case any more than it was proper in the Suffolk County

24   case, the process of responding to that will effectively

25   consume my attention and, to a lesser extent, my wife's

1   attention for however long I have to respond to it.

2          And, if I may, your Honor, in addition to that, I do

3   need to assist.  I am not only *pro se*, but, I mean, I do need

4   to assist my attorney with trial prep in *that* case.

5          So, it would be a very effective approach for Fidelity

6   to employ.  I don't fault them for that.  But that would be

7   some of the implications.

8          THE COURT:  I am not in the strategy game anymore, but

9   I guess my thought about it is that most parties would welcome

10  the opportunity to see the road map that the other side sets

11  out to indicate what direction they are going in.  This is a

12  way of doing it, and it is also a way of shaping the discovery

13  process to the degree necessary.  You indicated an interest in

14  a longer period of time to respond.  That does not seem to me

15  to be a problem.  What I do not want to do is create additional

16  discovery activity that is unnecessary for either of the

17  parties in the case.

18         MR. ZANG:  Your Honor, I would respond to that by, I

19  guess, turning the question back over to the defendants.  This

20  is a case, as it exists before you this afternoon, in which no

21  discovery has been conducted at all, and in which, by the

22  defendants' own admission, the only party that has actually

23  seen what non-privileged documents there are, by their own

24  admission the most relevant documents to this case have not

25  been produced.  And so based on that, I would respectfully turn

1   it back to them and say, well, why shouldn't I be permitted to

2   perform any discovery in this case?

3        THE COURT:  Well, I guess there are a couple of

4   thoughts that I have about that, the principal one being it is

5   hard for me to crystalize exactly what is going on here.  I

6   cannot say that I think that the prospects of summary judgment

7   with just the initiative are strong.  I have looked at whatever

8   was said in the Motion to Dismiss, have some idea of what the

9   factual allegations are.  Whether they can be borne out I do

10  not know, but those are the factual allegations, and if they

11  come forward with a summary judgment motion that you say, "I

12  can dispute on the following bases," that was a fool's errand

13  on their part.  But it is useful to me in shaping my

14  understanding of what is really at issue in the case.

15       So, I guess I will put the question back to them; you

16  cannot directly.

17       But, Mr. Savage, what is going to happen?  What kind

18  of summary judgment motion do you have?  If I look at this

19  thing and I say it can go forward on the Motion to Dismiss on

20  these factual allegations, you come back and say, "The factual

21  allegations are wrong," he comes back and says, "No, actually,

22  I have a basis for believing," and it includes circumstantial

23  evidence, but "a basis for believing that I can contest this,"

24  and so then where are we?

25       MR. SAVAGE:  Well, the legal standard, as the Court

1    knows, and we kind of built off your Motion to Dismiss, is, it

2    is belief, but it is subjective and objective.  Subjective,

3    that gets harder.  I get where the Court is coming from with

4    that question.  But objective, I think the record is going to

5    be uncontested that there was no --

6              THE COURT:  So, what is this, a partial summary

7    judgment on the question of objectivity?  That is what it comes

8    down to, I guess.

9              MR. SAVAGE:  Well, if there is no objective basis for

10   his belief that there was a securities law violation, we win.

11   I mean, it's an element of the only remaining count here.  And

12   that's the central -- there is a couple of other bases for the

13   motion, but the central one and the simplest one and the one

14   that I am certain he won't contest on the facts is that.  So,

15   it seems to me the Court can --

16             THE COURT:  Well, why isn't the Motion to Dismiss, not

17   that I am wedded to that, but why isn't the Motion to Dismiss

18   enough to say on these facts as alleged there is a grounds for

19   a retaliation claim?

20             MR. SAVAGE:  Well, the Court has already done that on

21   the Motion to Dismiss.

22             THE COURT:  Right.

23             MR. SAVAGE:  But now you told us to go get the facts

24   because it is a summary judgment issue.  We have now gotten the

25   facts, and the facts are not as the complaint are.  The facts

1  are uncontested that there is no objective basis to think that

2  a draft document that was not signed by anyone at Fidelity that

3  was being revised by Fidelity was --

4          THE COURT:  Well, okay.  I guess I have two thoughts

5  about it.  One is the disparity of resources gives me pause

6  that the defendant here can absorb the costs of multiple

7  summary judgment motions.  The plaintiff is going to have a

8  little bit more difficulty with that.

9          Second, much as I enjoy seeing all of you, if I have

10 to see you multiple times on summary judgment motions I am not

11 going to be very happy.  I will not put it that way.  I will be

12 disappointed, I guess, is how I will put it.  And that seems

13 like something that enough about you.  What about me?  And so,

14 I am thinking about that as well.

15         So, you file a motion for summary judgment.  He comes

16 back and says, "There are these facts I want to do discovery

17 on."  "Denied --" summary judgment motion is denied -- and we

18 are back to square one.  Now, the question is why not just

19 provide some discovery?  What is the problem?

20         MR. SAVAGE:  Well, one is we cannot get from the

21 plaintiff any discovery that is relevant to anything we are

22 doing in this.

23         THE COURT:  No.  He is the one who has to oppose the

24 motion.  You understand that.  He is trying to find out things

25 about what you know and what you are going to contend and that

1   sort of thing.

2          MR. SAVAGE:  And he has got all that, we would

3   maintain, based on the numerous depositions in the state case,

4   all of which went into this very case.  So, he has got fact --

5          THE COURT:  Relates to the questions of termination to

6   be sure, but --

7          MR. SAVAGE:  Well, as an example, your Honor, he got

8   to depose in the state case Mark Jensen, the Fidelity lawyer

9   who, upon being informed of the document he wrote on

10  March 2005, which he says is whistleblowing, was tasked to go

11  to Mr. Zang, talk to him about what his concerns were, address

12  them.  It led to modifications of the document.  It's like that

13  was all about the SOX case; that wasn't anything about the

14  state case.

15         THE COURT:  I do not know exactly how I should provide

16  an incentive structure to thinking about doing this summary

17  judgment motion.

18         MR. SAVAGE:  Well, let me be totally candid on where

19  we are coming from here, your Honor, because it does relate as

20  well to the state case.  Mr. Zang filed a federal case with a

21  federal claim and a state claim.  A month later he filed a

22  state case that could also have been filed with this federal

23  case.  The principles of *res judicata* are, if we win here, we

24  win there; if he wins here, he wins there.  In other words, all

25  of it could have been brought, it all comes from the same --

1    THE COURT:  I have never really had to think about

2  this in which there are parallel cases going forward and the

3  claim is that, while the case could have been brought in the

4  Federal Court, it was not, that, nevertheless that provides *res*

5  *judicata* as to any claims arising out of termination.  I do not

6  know the law on that.

7    MR. SAVAGE:  We looked into it, which is what has

8  caused us to try to sequence it this way.  Because if we are

9  looking at saving resources for the plaintiff and saving

10  resources for us, one step would be a disposition in our favor

11  on this summary judgment motion prior to the state trial.  The

12  state trial goes away if we are right on *res judicata*, this

13  case goes away.  It's all over.

14    THE COURT:  Was there summary judgment in the state

15  case, summary judgment practice?

16    MR. SAVAGE:  Yes, and it was denied as to us.

17    THE COURT:  And was there an opinion of some sort?

18    MR. SAVAGE:  I think Judge Ball wrote a very, a

19  relatively brief opinion, a page and a half or so.  So, we

20  think, though, Judge, there is zero downside.  I hear your

21  concern about multiple summary judgment motions.  I can't say

22  there won't be if we lose this.  That's just a fact of life.

23  But there is no downside to getting the discovery framed by the

24  motion, it seems to me.

25    THE COURT:  Well, you say it is fact of life, and I

1    can respond by just saying, "No."

2         MR. SAVAGE:  That's right, the fact of life being it's

3    entirely up to you, and I have taken that in.  I understand.

4         But it seems to me that, framing what is at issue in

5    this case, there could be no downside for anybody.

6         THE COURT:  What do you understand is the timing for

7    the trial in the state court?

8         MR. SAVAGE:  Again, late October, the 16th?

9         MR. BENOIT:  October 20.

10        MR. SAVAGE:  October 20.

11        THE COURT:  So, I give Mr. Zang the time that he says

12   he needs for it, and I am not going to be resolving the summary

13   judgment motion by then.  He says that he whispered in the

14   hallway, "October 15th."

15        MR. SAVAGE:  October 15th, 2015, your Honor, on his

16   schedule.  This is 2014 that we are on.

17        THE COURT:  Right.  Let's say that he says October 15

18   for oppositions to your motion, October 2014 for opposition to

19   your motions.  You have proposed that you file it next week.

20   He files a response August 14th.  He says October 15.  That is

21   what he says.

22        MR. SAVAGE:  The October 15, 2015 made sense in the

23   order that he had proposed where summary judgment would be

24   filed September 1st, 2015.  An October date, particularly for

25   the reasons I've articulated why we want to file the motion,

1    doesn't make any sense in this context.  He could do 30 days

2    like --

3            THE COURT:  Well, I guess -- I am not trying to be

4    "cute," I guess would be the term, but I am inclined to give

5    him time to file his response.  He asks till

6    October 15th, 2014.  You have been in control and are in

7    control of all of the discovery.  He has not had particularized

8    discovery in this case, and that does not really get you what

9    you want, that is, a resolution of this matter before it goes

10   to judgment in the state case.

11           MR. SAVAGE:  We will have to go back to the state case

12   and ask him to put it off.

13           THE COURT:  You mean, so you can play *Alphonse and*

14   *Gaston*?  No way.

15           MR. SAVAGE:  No, your Honor.

16           THE COURT:  This is clarifying a great deal for me.

17           MR. SAVAGE:  Let's see who played who in the

18   beginning.  They file a federal case and a state case.

19           THE COURT:  Listen, there is a case that is ready to

20   go.  We have got a trial date, and the defendant comes in and

21   says, "Wait, we have a Hail Mary," that consists of a treatment

22   of *res judicata* in parallel cases.  This just does not strike

23   me as something I want to be a part of.

24           Yes, Mr. Zang?

25           MR. ZANG:  Your Honor, may I address two things very

1    briefly that counsel said?  The first is, just on the summary

2    judgment motion, what counsel said was that I wrote something

3    and Fidelity sends its lawyer to --

4              THE COURT:  I do not want to hear the merits of it, I

5    really do not.

6              MR. ZANG:  Okay.  And then the second would just be

7    maybe meeting us halfway, and that would be to maybe permit me,

8    because the lion's share of discovery that was just sought and

9    just out and out denied is, in fact, document requests,

10   anything and everything that had any relevance to this case,

11   and so what I would suggest, if the Court is looking for maybe

12   a middle ground, would be to permit me to conduct discovery

13   requests first, see where that leaves us, and then put on hold

14   the depositions.

15             MR. SAVAGE:  Your Honor, I can tell you he can file

16   his discovery requests.  The response would be one document.

17             THE COURT:  Just a moment.  Let me just put it this

18   way:

19             I will consider the Motion for Summary Judgment date

20   that you are talking about, upon a representation that you will

21   not go to the state case, state judge, to delay the trial of

22   the case.

23             Are you prepared to make that undertaking?

24             MR. SAVAGE:  So, the schedule would be we file in 30

25   days.

1          THE COURT:  You file and then I will --

2          MR. SAVAGE:  And he will respond?

3          THE COURT:  Right, October 15th.

4          MR. SAVAGE:  Yeah, we will agree to that, Judge.

5          THE COURT:  This is directly or indirectly go to the

6    state court and say, "We want a delay in this case," in the

7    trial of that case --

8          MR. SAVAGE:  Let's be clear --

9          THE COURT:  -- so you understand what you are agreeing

10   to.

11         MR. SAVAGE:  That's what I mean when I say let's be

12   clear.  What I thought we were agreeing to was we are not going

13   to refer to the federal case as any basis for delay.  If we

14   have a witness who is unable to attend or something, we have

15   got to be able to make our usual motions.

16         THE COURT:  I understand that.  That is fine.  But, as

17   far as I am concerned, he is going to get discovery.  You can

18   file your Motion for Summary Judgment.  I will deny it the next

19   day, because he has not had the discovery.

20         So, now we are talking about document discovery, which

21   he will file by August 14th in this case, and then you will

22   respond in the ordinary course, and then if that resolves the

23   question of discovery, then we can move forward on the question

24   of summary judgment.  But I am not going to put this case in

25   the position of directly or indirectly affecting the orderly

1      resolution of the state case.

2              MR. SAVAGE:  Your Honor, could we at least limit the

3      initial phase of discovery to the liability issues?

4              THE COURT:  I guess so.  That is what your Motion for

5      Summary Judgment was going to be?

6              MR. SAVAGE:  Yeah.  And if, ultimately, there is more

7      to do with the damages --

8              THE COURT:  Yes, I think that is fair.

9              MR. SAVAGE:  All right.  Thank you.

10             THE COURT:  So, Mr. Zang, you have until August 14 to

11     file interrogatories, written interrogatories, in this case

12     seeking both responses and also document production relevant to

13     liability on this case, and then they will respond in as timely

14     a fashion as they think they can.  The faster they respond, the

15     better position they are in, but they have their right to

16     respond or take a while to respond to the requests, and then,

17     after you see their response, you will indicate whether or not

18     you think any further depositions are necessary and indicate

19     why.  Because I am prepared to give you the interrogatory and

20     document production.  The depositions I feel little

21     uncomfortable about, because they are costly and really

22     involve, perhaps, just the same old same old on this.  As I

23     understand it, they have taken a position about why you were

24     terminated and also why you were not, and I am not sure that

25     any deponent is going to change that view.  But if, after

1   looking at it, you say, "Okay, I would like to have this

2   deposition," you have to identify the depositions with

3   specificity, again, limited to the question of liability.

4           MR. ZANG:  So, this sequence -- forgive my

5   ignorance -- so, the sequence, your Honor, would be I submit my

6   document requests and interrogatories by August 14?

7           THE COURT:  Right.

8           MR. ZANG:  Is there a schedule for the pending summary

9   judgment motion?

10          THE COURT:  No.  People can file any motion they want.

11  I will tell you right now that if they file a Motion for

12  Summary Judgment on July 24th, I am going to deny it, because

13  we have ongoing discovery in this case going to the questions

14  that Mr. Savage wanted to raise here or says are in dispute

15  here.

16          But I am not choking somebody off on their discovery,

17  particularly for these complex purposes of *res judicata*.

18          MR. ZANG:  Thank you, your Honor.

19          THE COURT:  And then we will see what that leads to.

20  If there is nothing further, you have completed the discovery

21  that you want, and I have said there is not going to be any

22  more, then we will set a summary judgment schedule on

23  liability.

24          MR. ZANG:  And so, will the Court set a conference

25  date, or should I file a motion for permission to conduct

1    depositions?

2              THE COURT:  Well, just to keep you both engaged --

3              MR. SAVAGE:  Thank you, your Honor.

4              THE COURT:  -- why don't we set a further conference

5    date for October 10th at 2:30.

6              MR. SAVAGE:  Fine, your Honor.  Actually, can I raise

7    one other issue?

8              THE COURT:  Sure.

9              MR. SAVAGE:  Doesn't it make more sense, if we are

10   going to go on a discovery schedule prior to summary judgment,

11   that we stay the discovery here in this case pending resolution

12   of the state case?  Why don't we just put this all off until

13   the state case, which is teed up -- Mr. Zang said it's going to

14   distract him to do a lot of work.

15             THE COURT:  Well, I will hear from him.  This is a

16   distraction for Fidelity, too?

17             MR. SAVAGE:  It is, your Honor.  It's an expense that

18   may not be necessary if things get resolved.  It is, in fact, a

19   distraction.  So, I guess I would request that, since it is

20   only in October, that we come back and see you after the state

21   case and set a discovery schedule.

22             THE COURT:  Mr. Zang?

23             MR. ZANG:  Your Honor, I have been waiting nine years

24   to conduct discovery.

25             THE COURT:  Well, that answers the question.

1    MR. SAVAGE:  Although, your Honor, he has said he

2    wants the discovery here for the state case, which is

3    problematic to us.

4         THE COURT:  And you will respond by saying, "Not

5    relevant to this case."  But if it is in any way relevant to

6    this case, then he is entitled to it.

7         MR. SAVAGE:  I understand.  It's just a matter of

8    when.  Is it now or October?

9         THE COURT:  Right.  Well, as I understand it, he has

10   not had discovery on this case, and he has not had it all

11   along.

12        I think we have an understanding of what is going to

13   happen here.

14        So, August 14 he files his interrogatories and

15   document requests.  The response, I assume, will be in 30 days

16   thereafter, according to the *Rules*.  I am not going to be

17   particularly sympathetic to any delay beyond the *Rules*.  Then

18   we have a status conference, a scheduling conference, on

19   October 10.

20        MR. SAVAGE:  Could we move that to the Monday?  10 is

21   not good for me, your Honor.  The day before or the Monday?

22        THE COURT:  Let me just see.  The Monday is --

23        MR. SAVAGE:  That's actually Columbus Day or

24   something.

25        THE COURT:  I will be here, but my staff is not going

1   to be.

2           MR. SAVAGE:  Can we do the 9th?

3           THE COURT:  Yes, that will work.

4           MR. SAVAGE:  Thank you, your Honor.

5           THE COURT:  So, the 9th at 2:30.

6           Once you have received a response from the defendants

7   to your document discovery, Mr. Zang, within five days you

8   indicate whether there are any depositions that you want to

9   take, so that that is something that we can take up at the

10  conference as well, to see whether or not that makes sense

11  here.  I am not looking to create additional discovery

12  responsibilities beyond those that might ordinarily be

13  necessary, and certainly if there is some reason to believe

14  that there is no need to take further depositions, then I am

15  not going to be that interested in permitting further

16  depositions.  But you are entitled to some document discovery.

17          MR. ZANG:  Your Honor, may I ask a clarifying

18  question?

19          THE COURT:  Sure.

20          MR. ZANG:  You said within five days I should indicate

21  if there are any --

22          THE COURT:  Five days of the receipt of their

23  responses to your document requests and interrogatories.

24          MR. ZANG:  So, in the past, your Honor, when I have

25  received a response to a document request, it has been a long

1    list of objections as opposed to the actual documents, so I

2    just wanted clarification.

3           THE COURT:  They will have to respond within 30 days.

4    If it is a lengthy collection of oppositions and objections and

5    that sort of thing, well, we will deal with that.  I cannot

6    imagine that they are going to be doing that.

7           MR. SAVAGE:  It hasn't been yet.  We produced the

8    documents, your Honor.

9           MR. ZANG:  But, in any event --

10          THE COURT:  But, in any event, that is when you

11   respond.  That is when this tees up.

12          MR. ZANG:  Okay.

13          THE COURT:  Let me be clear.  I think Mr. Savage

14   understands; you should understand as well.  I have minimum

15   tolerance for discovery disputes, and I try to deal with them

16   with whatever tool is at hand, but most of the tools I have are

17   broad axes, and the parties would do well to use scalpels in

18   dealing with this, because it is less painful.

19          MR. SAVAGE:  I believe you have overstated your

20   tolerance, your Honor, but that aside --

21          THE COURT:  No, I am not so certain I have.

22          MR. SAVAGE:  But Mr. Zang and Fidelity have an

23   agreement, your Honor, that all the discovery from the state

24   case is usable in this case.

25          THE COURT:  Right, yes.

1          MR. SAVAGE:  And we will get an appropriate protective

2    order --

3          THE COURT:  The discovery from the state case belongs

4    here, for what it is worth, and you say it is not sufficient,

5    and we will see, but I will give you first shot at doing it,

6    and then we will go from there.  It may be that afterwards I

7    will say, "No, this is ripe for summary judgment," and we will

8    go from there.

9          MR. ZANG:  Thank you, your Honor.

10         THE COURT:  So, I am getting a response from Mr. Zang

11   probably sometime toward the end of September, mid to end of

12   September, and I would welcome status proposals, say,

13   October 6th from both parties, just to tell me where you think

14   the case should be going.

15         MR. ZANG:  I'm sorry.  That was October 6?

16         THE COURT:  October 6th.

17         So, I think that deals with the preliminaries of this

18   matter.

19         MR. SAVAGE:  Thank you, your Honor.

20         THE CLERK:  All rise.

21      (The Honorable Court exited the courtroom at 3:25 p.m.)

22       (WHEREUPON, the proceedings adjourned at 3:25 p.m.)

23

24

25

1                            C E R T I F I C A T E

2

3

4              I, Brenda K. Hancock, RMR, CRR and Official Reporter

5    of the United States District Court, do hereby certify that the

6    foregoing transcript constitutes, to the best of my skill and

7    ability, a true and accurate transcription of my stenotype

8    notes taken in the matter of *Zang v. Fidelity Management &*

9    *Research Co.*, No. 1:08-10758-DPW.

10

11

12

13

14

15   Date: July 30, 2014                *s/ Brenda K. Hancock*
                                        Brenda K. Hancock, RMR, CRR
16                                      Official Court Reporter

17

18

19

20

21

22

23

24

25